**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000701
24-JUL-2014
08:40 AM**

NO. CAAP 13-0000701

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
CHRISTOPHER LEE SLAVICK, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 04-1-1534)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Christopher Lee Slavick (**Slavick**) appeals from a May 3, 2013 Judgment of Conviction and Sentence of the Circuit Court of the First Circuit (**Circuit Court**), which found Slavick guilty of Promoting a Harmful Drug in the First Degree.[1] On appeal, Slavick maintains that: (1) the Circuit Court committed plain reversible error when it *sua sponte* found manifest necessity to declare a mistrial without Slavick's consent; and (2) the Circuit Court erred in holding that Slavick's rights to a speedy trial were not violated by the more than six-year delay between his indictment and the service of the bench warrant.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced, applicable authorities, and the issues raised by the parties, we resolve Slavick's points of error as follows:

---

[1]     The Honorable Karen S.S. Ahn presided.

(1) Slavick contends that the Circuit Court plainly erred when it *sua sponte* found manifest necessity to declare a mistrial without his consent because the Circuit Court, *inter alia*:

> (1) failed to question every juror, (2) failed to ask each juror if the juror could follow the circuit court's instruction to disregard the one juror's unauthorized research and discussion as it came from the internet, and (3) failed to determine if Slavick would proceed with 11 jurors to verdict before determining *sua sponte* that manifest necessity existed in the absence of Slavick's consent to a mistrial.

He also argues that the court violated his constitutional rights to not be placed twice in jeopardy for criminal charges, pursuant to Article I, Section 10 of the Hawai'i Constitution, as well as the Fifth and Fourteenth Amendments of the United States Constitution.

"A mistrial is properly declared and retrial is not barred by the defendant's right against double jeopardy where the defendant consented to the mistrial or there was manifest necessity for the mistrial." State v. Wilmer, 97 Hawai'i 238, 243, 35 P.3d 755, 760 (2001) (citations omitted).

Slavick did not expressly consent by moving or affirmatively arguing for a mistrial. However, both Slavick and his standby counsel, Richard Gronna (**Gronna**), expressed their opinion that the jury had been "tainted" and that the Circuit Court had no "other option other than to declare a mistrial." When asked explicitly by the court about whether he was asking for a mistrial, Slavick replied: "I don't see how it's -- anything else is possible." Additionally, when asked if he wanted to go with the sitting jury, Slavick stated that he "did want to go with them until this." From these statements, it appears that both Slavick and his standby counsel believed that the jury had been irredeemably compromised. Nevertheless, Gronna demurred, stating: "I don't want a mistrial being declared on a defense motion."

We need not decide whether Slavick's declaration that the jury was tainted constituted implicit consent, notwithstanding standby counsel's "procedural" concerns that motivated

2

him not to seek a mistrial. See Wilmer, 97 Hawai'i at 243-44; 35 P.3d at 759-60 (consent may be express or implied); see also State v. Quitog, 85 Hawai'i 128, 142, 938 P.2d 559, 573 (1997). Here, we conclude that the Circuit Court did not err when it declared a mistrial because there was a manifest necessity to do so.

"Manifest necessity is defined as circumstances in which it becomes no longer possible to conduct the trial or to reach a fair result based upon the evidence." Wilner 97 Hawai'i at 244, 35 P.3d at 761 (citations, internal quotation marks, and ellipsis omitted). A "classic example" of manifest necessity is "a mistrial ordered sua sponte because of a true inability of the jury to agree upon a verdict." State v. Moriwake, 65 Haw. 47, 52, 647 P.2d 705, 710 (1982) (citations omitted).

"Because manifest necessity is a high standard not to be declared lightly, a trial judge should record his or her reasons for declaring a mistrial and include the reasons for finding manifest necessity." Wilmer, 97 Hawai'i at 245, 35 P.3d at 762 (citation and internal quotation marks omitted). When analyzing whether there was manifest necessity, one must consider "whether the trial court sufficiently considered the alternatives." Quitog, 85 Hawai'i at 143, 938 P.2d at 574. "Thus, a trial court's declaration of a mistrial is not supported by manifest necessity if less severe options were available that would have protected both the defendant's rights and the public's interest." Id. (footnote, citation, internal quotation marks, and brackets omitted). Despite the high standard that trial courts must meet when it comes to finding manifest necessity, this determination is left "to the sound discretion of the trial court," with appellate review for an abuse of discretion. See Wilmer, 97 Hawai'i at 243, 35 P.3d at 760; Quitog, 85 Hawai'i at 143, 938 P.2d at 574 (stating that "great deference will be given to the trial court when it finds manifest necessity").

Slavick's explanation for his possession of 1000 pills of Danabol, which contained a steroid known as methandrostenolone or methandienone, was that he had bought them at a pharmacy in

Thailand when he was sick and had diarrhea, he did not know that the drug was a controlled substance, and that his wife had packed the bottles of pills in his bag without his knowledge. The Circuit Court's declaration of a mistrial occurred after it came to light that a juror had conducted outside, independent research regarding Danabol DS and shared the results of his research with the rest of the still-deliberating jurors. The information that the investigating juror shared related to the drug's sole use as a street drug for body building, which was not offered in evidence at trial and was contradictory to Slavick's explanation that he bought the pills for his flu-like symptoms and diarrhea. Three days prior to this incident, the jurors had indicated that they were unable to reach a unanimous verdict, but were instructed to continue deliberations.

The Circuit Court questioned the jury foreperson and three other jurors about the juror research, the discussions that ensued from the revelation, and the impact on the jurors' deliberations. The foreperson indicated that he thought that he could set aside the information and the discussion that ensued, not let any of that influence his decision, and be fair to both sides. However, he also indicated that he thought that the research might have an impact on other jurors, stating: "I think it had a[n] impact with respect to solidifying some of the information that they may have believed was not pertinent, it may have become pertinent. It may have become influential with respect to whether or not they could go one way or the other. I think that made them for sure go one way instead of the other." Upon further questioning, the foreperson reiterated that it was his impression that the research impacted whether some jurors might be willing to decide the case one way versus another.

The second juror interviewed by the court agreed that he had "got new information regarding what that person said" and that the juror research involved the drug being "specifically meant for body building, that steroid," and "the shape of the pill and the color was specifically blue and heart shaped." When the court asked whether the juror could set that information

aside and not let it influence the juror's decisions, the juror responded: "I think I can." The second juror had not noticed how jurors might have been impacted.

The third juror indicated, *inter alia*, that the researching juror "did disclose that it is a steroid and it's not something that could be used to be taken with an illness, or it wouldn't be like the type of medication that you would prescribe[] for the type of illness that was presented to us for the case. And that it is something that body builders use . . . to gain strength, mass and, I guess, to make themselves bigger." This juror admitted that, although it had not changed her decision, the information was something that she might consider in further deliberations because the researching juror said it was something that was not used for the type of illness that was described during the trial. This juror, nevertheless, maintained that she could set the information and discussions aside and not let it impact her decision.

After the discussions with counsel in which Gronna and Slavick declared the jury to be tainted, but declined to seek a mistrial, a fourth juror was called in for questioning. The fourth juror recalled the research as follows: "He said that he looked up Anabol steroids on the internet and he felt that it was not a medication, that it was a street drug that was only used for body building." When asked whether it impacted her position as a juror, the fourth juror responded: "I think it's solidified it." When asked whether the information impacted the juror's ability to change his or her mind, the juror said: "I think it would make it harder to change my mind."

At this point, the Circuit Court informed the parties that it had heard enough, rendered its decision to declare a mistrial based on manifest necessity, and explained its rationale. Based on the record in this case, and having reviewed all of the parties' arguments, we conclude that the Circuit Court did not err when it found a manifest necessity to declare a mistrial due to the juror's serious misconduct, which irreversibly impacted the jury's deliberations and prejudiced the

defendant, thus jeopardizing Slavick's right to a fair trial, notwithstanding the lack of Slavick's consent to the mistrial. Slavick's arguments to the contrary are without merit.

(2) Slavick argues that the Circuit Court erred in holding that his rights to a speedy trial under the United States and Hawaiʻi constitutions and HRPP Rule 48 were not violated by the more-than-six-year delay between his indictment and the service of his bench warrant, specifying that "[t]he only issue in this appeal concerns the period between August 5, 2004, the indictment date, and December 16, 2010, when [he] was arrested - 2175 days."

"Under the sixth amendment to the United States Constitution and article I, section 14 of the Hawaiʻi Constitution, an accused is guaranteed the right to a speedy trial in all criminal prosecutions." State v. Lau, 78 Hawaiʻi 54, 62, 890 P.2d 291, 299 (1995). In order to determine whether a defendant's speedy trial right was violated, the Hawaiʻi Supreme Court has stated that courts must consider the following factors: "(1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant." Id. (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). "[T]he weight accorded each of these factors is to be determined on an ad hoc basis." Id. (citations omitted).

Here, as the State acknowledges, an examination is appropriate because the length of the delay was over six months, which the supreme court has deemed "sufficient to warrant an inquiry into the other Barker factors." Id. at 63, 890 P.2d at 300 (footnote omitted). While all reasons must be considered because the government is ultimately responsible for timely prosecution, "a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government, while a more neutral reason such as negligence or overcrowded courts should be weighted less heavily." Id. (citations, internal quotation marks, and brackets omitted).

6

It appears from the record that Slavick was not present in Hawai'i between August 5, 2004 until at least late November 2010. The record also reveals that the State took various, good faith and appropriate steps (through the use of computer and database checks) to locate Slavick on the mainland, at reasonable times during this period, to no avail. Slavick does not assert that he was actually in Hawai'i during that period of time, rather he asserts that he would have been detained three years earlier, when he re-entered the country through Atlanta, Georgia, if the State had taken earlier steps to enter his arrest warrant into a National Crime Information Center (**NCIC**) database.

Slavick did not assert his right to a speedy trial, thus, the third <u>Barker</u> factor does not support Slavick's argument.

Slavick appears to assert that the length of the delay in this case was inherently prejudicial, particularly in light of the State's alleged lack of diligence in obtaining jurisdiction over him, but does not point to any specific prejudice such as oppressive pretrial incarceration, anxiety and concern of the accused, or inability to prepare a defense due to loss of defense witnesses or their faded memories. <u>See</u> <u>Lau</u>, 78 Hawai'i at 64, 890 P.2d at 301. "We are aware that a showing of actual prejudice to the defense is neither sufficient nor necessary to every speedy trial claim." <u>Id.</u> at 65, 890 P.2d at 302.

Although we conclude that the lengthy delay in this case was presumptively prejudicial, we further conclude that this presumption is overcome by the facts of Slavick's absence from Hawai'i, the State's efforts to serve the arrest warrant on Slavick, and the lack of actual prejudice. Thus, Slavick was not denied his constitutional right to a speedy trial.

We also reject Slavick's argument that the Circuit Court improperly excluded August 5, 2008 to December 16, 2010 under Hawai'i Rules of Penal Procedure (**HRPP**) Rule 48. Slavick contends that "[t]he State had multiple opportunities to apprehend Slavick from December 2007 to April 2010 and failed to do so only because of the negligence of State law enforcement to

enter [his] warrant into NCIC in 2004 when it was issued," and that "[t]his more than two year period must be counted against [the] State both as to length and reason for delay."

HRPP Rule 48 provides, in part, that "the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within six months . . . from the date of arrest if bail is set or from the filing of the charge, whichever is sooner[.]" However, certain periods "shall be excluded in computing the time for trial commencement," including "periods that delay the commencement of trial and are caused by the absence or unavailability of the defendant." HRPP Rule 48(c)(5). The issue of defendant unavailability was addressed in State v. Jackson, 8 Haw. App. 624, 817 P.2d 130 (1991), which held that "a defendant . . . shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence[.]" 8 Haw. App. at 630-31, 817 P.2d at 135 (quoting the Federal Speedy Trial Act, 18 U.S.C.S. § 3161(h)(3)(b) (Law. Co-op. 1979)).

In Jackson, this court "adopt[ed] the due diligence standard established by the Federal Speedy Trial Act," stating the following:

> Due diligence is a fluid concept that must be determined on a case by case basis and is a question of fact subject to the clearly erroneous standard of review. To establish due diligence, other jurisdictions have required the state to show "reasonable efforts" to procure the defendant for trial or a "good faith attempt" to secure defendant's presence for trial by (1) commencing formal proceedings, or (2) "making a sincere request from the sister state authorities."

Id. at 630-31, 817 P.2d at 135 (citations omitted).

Additionally, "[i]n determining whether a state used due diligence to procure a defendant's presence for trial, the focus is on what was done by the state rather than on what was not done." Id. at 632, 817 P.2d at 135 (citations omitted). Thus, the "primary emphasis" should be on the "reasonableness of the efforts actually made, not on the alternatives that might have been available." Id. (citation omitted).

The Circuit Court denied Slavick's Motion to Dismiss on October 9, 2012, concluding in its Conclusion of Law (**COL**) 6 that "the period between August 5, 2004, and December 16, 2010, may be excluded due to the unavailability of the Defendant under Rule 48(c)(5)." "A trial court's findings of fact [] in deciding an HRPP 48(b) motion to dismiss are subject to the clearly erroneous standard of review," whereas "whether those facts fall within [HRPP 48(c)'s] exclusionary provisions is a question of law, the determination of which is freely reviewable pursuant to the 'right/wrong' test." State v. Samonte, 83 Hawai'i 507, 514, 928 P.2d 1, 8 (1996) (citation omitted). Slavick challenges COL 6 on the theory that he would have been available to Hawai'i at each contact with law enforcement beginning with his return to the United States through Atlanta in December 2007, but for the State's failure to enter the arrest warrant in NCIC.

The record is clear, and Slavick does not challenge, that Slavick was not present in Hawai'i during the period of about August 5, 2004 until December 16, 2010. The record also reflects that the State did take a variety of efforts to procure Slavick's presence for trial. For instance, immediately after Slavick's indictment in early August 2004, State Deputy Sheriff Daniel Reed (**Reed**) "checked Hawaii computer databases" for information pertaining to Slavick, including that of the HPD. Reed also personally checked a known Hawai'i address for Slavick at "277 Ohua Avenue"; a location called "Care-van," where Slavick had been known to visit; and the "Institute for Human Services." Subsequent to these initial efforts, Reed made other attempts to locate Slavick: on September 1, 2004, he checked with U.S. Customs, which "agreed to inform Reed if Defendant sought to re-enter the United States through Hawaii"; on October 10 and 11, 2004, Reed conducted further computer and database checks; and on January 18, 2007, Reed searched a new database called Accurint, though the one Colorado address it found turned out to be invalid.

On September 8, 2008, Deputy Sheriffs Ryan Machado (**Machado**) and Brian Scanlan (**Scanlan**) took over the investigation

9

into Slavick's whereabouts because Reed had left Hawai'i to take a position elsewhere. Throughout 2008 to 2010, Machado took various measures to locate Slavick, including the following: on September 8, 2008, "re-check[ing] databases" for criminal history, motor vehicle/driver's license information, and police reports related to Slavick; Machado conducted further computer checks on July 30, 2009, November 11, 2009, March 10, 2010, August 26, 2010, and November 24, 2010. Also on November 24, 2010, Machado checked the U.S. Marshals Task Force database and found possible addresses in other states (though none in Hawai'i).

As discussed above, appellate courts must focus on what was actually done and on the reasonableness of the measures undertaken; we conclude that the State's efforts in the present case constituted an exercise of due diligence in attempting to procure Slavick's presence for trial. See Jackson, 8 Haw. App. at 632, 817 P.2d at 135. Slavick argues that these efforts are outweighed by the State's failure to promptly enter the arrest warrant into NCIC. However, given that our primary emphasis is on whether reasonable efforts were made and "not on the alternatives that might have been available," we find Slavick's argument unconvincing. Id. (citation omitted). Moreover, the ICA made clear in State v. Willoughby, 83 Hawai'i 496, 927 P.2d 1379 (App. 1996), that failure to submit a warrant into the NCIC system at the time of its issuance is not fatal to excluding a period of delay under HRPP Rule 48(c)(5). See id. at 498-501, 927 P.2d at 1381-84 (concluding that a 1,089 day period was properly excluded pursuant to HRPP Rule 48(c)(5), despite the fact that the defendant's warrant was not entered into NCIC until over two years after the warrant's issuance). Therefore, the Circuit Court did not err when it excluded the period between August 5, 2004 and December 16, 2010 pursuant to HRPP Rule 48(c)(5), and concluded that Slavick's rights under HRPP Rule 48 were not violated.

For these reasons, the Circuit Court's May 3, 2013 Judgment of Conviction and Sentence is affirmed.

DATED: Honolulu, Hawaiʻi, July 24, 2014.

On the brief:

Earle A. Partington
for Defendant-Appellant

Sonja P. McCullen
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge